do not permit this presumption. The Rebellion had ceased, and the authority of the United States was acknowledged in that state; so that, the 30th June, 1865, the president issued his proclamation appointing a provisional governor, with authority to exercise all the powers to enable the loyal people of that state to restore it to its constitutional relation to the United States, directing that the district judge of the district in which South Carolina is included proceed to hold courts within said state, according to the provisions of the acts of congress, and that the attorney general instruct the proper officers to libel, and bring to judgment and sale, property subject to confiscation, and enforce the administration of justice, within the said state, in all matters within the cognizance and jurisdiction of the federal courts, &c. Under this provisional governor, the institutions of the state were in operation; the people of the state elected a governor, who entered upon his duties Nov. 29, 1865; and the provisional governor, having fulfilled his office, was relieved Dec. 22, 1865; so that, before the issuing of this commission, Dec. 26, 1865, the state was, in fact, in the exercise of its civil functions. Besides, if the commission had been issued because of the absence of civil judicature to take cognizance of the crimes, it would, indeed it must have been, so suggested in some part of the proceedings; there being no such suggestion evinces there was no such ground for this commission; nor would a temporary abeyance of civil judicature give jurisdiction to a military commission to try and sentence, however the military might be justified in arresting and detaining for the proper tribunal. The place to which Mr. Erskine's remark in 1 East. 306, applied was Gibraltar, a distant fortress, purely military; the subject, a soldier; the decision has no application. Transactions in our army in Mexico have been referred to. Mexico was a foreign country, conquered, its language and institutions unknown; South Carolina, a state of the Union rescued from rebellion, its laws and institutions restored. Acts Cong. 1863, c. 75, § 21 [12 Stat. 735], and 1864, Acts Cong. c. 215 [13 Stat. 356], have been relied upon for giving jurisdiction. The purpose of these acts is apparent on their face,—to enlarge the powers of the commanding general for executing, pardoning, or mitigating sentences of military commissions or courts martial, not to enlarge their jurisdiction. The commission derives no authority from these acts; congress intended no such thing. The ground on which this commission proceeded appears in the charges and specifications. It is, that the crimes were committed against a guard of the forces of the United States, composed of duly enlisted soldiers, on duty. The assumption is, that in cases of alleged offences by citizens against a guard of the army of the United States, detailed and on duty, and against enlisted soldiers on duty as such guard, it is competent to issue a military commission to arraign, try, and punish the offenders; the gist of the assumption being, that, of alleged offences by citizens against soldiers, soldiers should be the judges. Is this position in accordance with sound reason, or the fundamental principle of our laws? In so small a body, comparatively, as the army, so associated, with so much in common, so sensitive, there must be an esprit de corps that will not allow us to expect impartial justice from them in collision with citizens, while the broad ground of citizenship is not liable to this objection. This aspect of the case exhibits nothing favoring trial by military commission of alleged offences by citizens against soldiers; on the contrary, all sound principles are opposed to subjecting the accused to the disadvantages of such a trial.

---

## Case No. 14,843.

### UNITED STATES v. CONANT.

[Cited in U. S. v. Bettilini, Case No. 14,587. Nowhere reported; opinion not now accessible.]

---

## Case No. 14,844.

### UNITED STATES v. CONANT.

[9 Reporter, 36;[1] 9 Cent. Law J. 129; 2 Nat. Bank. Cas. (Browne) 148.]

Circuit Court, D. Massachusetts. May Term, 1879.

EMBEZZLEMENT—WHAT CONSTITUTES—INDICTMENT—MATTERS OF FORM—DESCRIPTION OF CRIME.

1. The word "embezzle," in Rev. St. U. S., is used to describe a crime which a person has an opportunity to commit by reason of some office or employment, and which is some breach of confidence or trust.

2. Rev. St § 1025, provides: "No indictment . . . . shall be deemed insufficient . . . . in matter of form only." *Held*, that anything that form a part of the description of the crime is not a matter of form.

Indictment under Rev. St. § 5209, relative to embezzlement by national bank officers, clerks, etc. On motion to quash an indictment.

LOWELL, District Judge.[2] [These indictments are drawn under section 5209 of the Revised Statutes: "Every president, director, cashier, teller, clerk or agent of any association" (that is, national banking associations, which are mentioned in this chapter), "who embezzles, abstracts, or willfully misapplies any of the moneys, funds or credits of the association, or who, without authority from the directors, issues or puts in circulation any of the notes of the association, or who, without such authority, issues or

---